Buck-Reiner Co., Appellee, v. James Beatty *et al.*, Appellees; J. H. Merrill & Co. *et al.*, Appellants.

Garnishment: LIEN: ATTACHMENT OF MORTGAGED CHATTELS. By the service of garnishment upon a mortgagee in possession of chattel property the garnishing creditor acquires a right to the surplus in the mortgaged property above the amount of the mortgage, which cannot be divested by subsequent attachment proceedings against the property as provided in chapter 117 of the Acts of the Twenty-first General Assembly.

| 82 | 353 |
|----|-----|
| 83 | 577 |
| 82 | 353 |
| 87 | 434 |
| 82 | 353 |
| 89 | 622 |
| 82 | 353 |
| 92 | 252 |
| 82 | 353 |
| 96 | 480 |
| 82 | 353 |
| 106 | 501 |
| 82 | 353 |
| 109 | 258 |
| 82 | 353 |
| 138 | 324 |

*Appeal from Appanoose District Court.*—Hon. H. C. Traverse, Judge.

TUESDAY, FEBRUARY 10, 1891.

James Beatty is a defendant in this suit. October 8, 1889, Beatty executed to J. H. Merrill & Co. and J. A. Philipps a chattel mortgage on a stock of goods to secure the sum of six hundred and thirteen

dollars and eighty-eight cents, and on the following day the mortgagees took possession of the same, and the store in which the goods were kept. On the same day, and after the mortgagees had taken possession of the goods, J. W. Garner, a defendant, and appellant in a suit pending by him against Beatty to recover four hundred and seventy-seven dollars and thirty cents, caused the mortgagees to be garnished. On the tenth of October, 1889, the deputy sheriff of Appanoose county, by virtue of an attachment in favor of the plaintiff company, and against the defendant Beatty, upon the refusal of the agent of the mortgagees to open the store or surrender the goods for a levy, broke into the store, and attached the goods; it being the intention of the plaintiff company at that time to contest the validity of the mortgage by which they were held. On the twelfth of October the plaintiff, under the provisions of chapter 117 of the Acts of the Twenty-first General Assembly, deposited the amount due on the mortgage, and made another levy of the attachment on the goods, and the officer retains possession of them. The mortgagees, because of the garnishment of Garner, refused to accept the money deposited in payment of the mortgage, or to surrender the note and mortgage. The plaintiff brings this action, asking a decree against the mortgagees for the surrender of the note and mortgage, and for a judgment and foreclosure. The defendant Garner pleads the facts as to his garnishment, and claims that it gave him a priority over the attachment of the plaintiff for the payment of his judgment. The district court held otherwise, and gave judgment for the plaintiff, from which the defendant Garner and the mortgagees appeal.—*Reversed.*

*McNett & Tisdale,* for appellants.

*W. J. Roberts* and *J. C. Davis,* for appellee.

GRANGER, J.—The case involves the construction of chapter 117 of the Acts of the Twenty-first General

Assembly.   The precise point is as to the effect of a
garnishment under an attachment proceeding, whether
it creates such a lien or right to the property that it
takes priority over a lien by virtue of a levy under an
attachment, where to make such levy effective the
mortgage debt is paid, as provided by the chapter cited.
It may be well to first inquire as to the state of the law
before the act in question, to better determine its effect
thereon by knowing the purpose to be subserved by the
act.   Under the law, as it then existed, chattel property
in the hands of the mortgagor, with the right of the
mortgagee to possession, was beyond the reach of pro-
cess by his creditors, except the mortgagee.   *Rindskoff
v. Lyman*, 16 Iowa, 260; *Campbell v. Leonard*, 11
Iowa, 489; *Gordon v. Hardin*, 33 Iowa, 550; *Vanslyck
v. Mills*, 34 Iowa, 375.   The effect of the holdings is to
protect the property from a lien resulting from a levy,
as well as to protect the mortgagee in his right of
possession.   It is also true, and on undisputed author-
ity, that such property in the hands of a mortgagee was
protected from seizure by process.   It was, however,
the law prior to the enactment of the act in question,
where the property was in the possession of the mort-
gagee, that a creditor might, by the process of attach-
ment by garnishment, secure the surplus after the
payment of the mortgage debt.   *Doan v. Garretson*
24 Iowa, 351; *Davis v. Wilson*, 52 Iowa, 187; *Hoffman
v. Wetherell*, 42 Iowa, 89; *McConnell v. Denham*, 72
Iowa, 494.   It is, however, expressly held that the
attachment by garnishment creates no lien on the
mortgaged property.  *Mooar v. Walker*, 46 Iowa, 164;
*McConnell v. Denham, supra.*  In the former case, a
principal question was, where there was an attachment
by garnishment, "whether, under the attachment pro-
ceedings, the plaintiff obtained any lien on, or right to,"
the property in the hands of the garnishee.   The
language indicating the extent of the question to be
considered is quite comprehensive, embracing not only
that of a lien on, but of any right to, the property; and
the language of the holding is equally comprehensive,

for it expressly denies a right to a lien, and declares that the creditor must look alone to the personal liability of the garnishee. The significance of such language is not doubtful, and, in view of it, we need not discuss the applicability of other authorities cited by the appellant. With that state of the law, the right of a creditor, as against a mortgagee, was to create a personal liability through the process of garnishment; and that right clearly existed. On what did this personal liability of the garnishee depend? On the fact that after the payment of the mortgage debt there was in his hands a surplus of the pledged property. Because of his personal liability, he could, as against the mortgagor, exhaust the surplus for the discharge of such liability. It may then be properly said that the law gave to him a lien on, or right to, the surplus for that purpose.

We may now inquire how the act in question affects the law as thus stated. It provides "that personal property, not exempt from execution, hereafter mortgaged, * * * may be taken on attachment or execution issued at the suit of a creditor of a mortgagor; but before the property is so taken the officer or plaintiff must pay or tender to the holder of the mortgage the amount of the mortgage debt, and interest accrued, or must deposit the amount thereof with the clerk" for the holder of the mortgage. By this proceeding the creditor obtains a lien on the property, which before could not be done.

We should now inquire if the remedy so provided is exclusive. Does it so operate as to exclude the creditor from the proceeding by garnishment, and a remedy through the personal liability of the garnishee? If so, the effect of the statute is to repeal or set aside a well-recognized law of the estate, and one having its foundation in statutory enactments. If both may stand in harmony with the legislative will, it should be allowed. The language of the act does not indicate a purpose to change the law, but to add a remedy by which creditors may obtain a lien on the property, and exhaust a

surplus which before was many times beyond their reach. The language of the act is that "personal property mortgaged    *    *    *    may be taken on attachment or execution," etc. There is no reason for construing the word "may" as "shall," or as imperative in its meaning. Again, to hold that the remedy provided by the act is exclusive is to deprive creditors, who are unable to discharge mortgage debts by payment, of every means of reaching that class of property, and make the law available to the few, and not the many; we believe that such was not the legislative purpose. With the two remedies in existence, the law comes to the aid of all classes of creditors, and works injustice to none. How, then, where the two remedies are sought as to the same property, as in this case, does the lien of the attachment affect the rights of the garnishing creditor? Before the attachment was levied at the suit of the plaintiff, Garner's right was thus: If the mortgagees had a surplus of property, Garner was entitled to the avails of such surplus. Was it the design of the law that an attaching creditor, under the act, should displace a garnishing creditor who had secured such a right? A law so designed would be manifestly unjust, and such a purpose should not be attributed to the legislature, in the absence of a clear intent. The courts should not, by doubtful construction, divest such a creditor of a right thus obtained. We think the garnishees are not, because of the attachment at the suit of the plaintiff, discharged from their liability to Garner, and that their liability carries with it the right to retain the mortgaged property for its discharge. What might be the rights of the plaintiff, if willing to discharge the liability of the garnishees by payment, is a question in no way presented, and as to which we express no opinion.

Upon the record, there should be a judgment for the garnishees, who are the appellants herein, for the property, and denying to the plaintiff its prayer for foreclosure and a sale. REVERSED.