KELLEY, MAUS & COMPANY *et al.*, Appellees, v. FLORY & NEWTON *et al.*, Appellants.

**Partnership :** INSOLVENCY: RIGHTS OF FIRM AND INDIVIDUAL CREDITORS.
  Where an insolvent firm was dissolved by one of the partners selling to the other his interest in the business, in consideration of the receipt of a portion of the firm property, and of  the assumption of the firm indebtedness by the partner continuing the business, and the latter,

the day following the dissolution, mortgaged the firm property remaining in his hands to secure an indebtedness owed by him individually, *held*, that the terms and circumstances attending the dissolution, and the subsequent speedy appropriation of the firm property to secure an individual creditor, showed a purpose to defraud the creditors of the firm, which deprived the firm of the right of election in the appropriation of the partnership property between firm and individual creditors, and that an individual creditor taking security upon the firm property with knowledge of the above facts, was not entitled to protection, as against the partnership creditors, as an innocent purchaser.

*Appeal from Jasper District Court.* — Hon. J. K. Johnson, Judge.

Tuesday, February 9, 1892.

Action for an accounting, and to declare certain chattel mortgages junior to the plaintiffs' attachment lien. The decree of the district court was such that Mary A. Leverton and C. W. Newton (of the defendants) and the plaintiffs appealed. In the disposition of the case, the defendants will be designated as appellants.—*Affirmed.*

*Meredith & Ogg* and *Harrah & Meyers*, for appellants.

*H. S. Winslow*, for appellees.

Granger, J.—For some time prior to April 16, 1889, C. D. Flory and C. M. Newton were partners in the "carriage business" at Newton, Iowa; and on that day, by a written contract and bill of sale, Flory sold his interest in the firm to C. M. Newton, and the partnership, by the terms of the sale, was dissolved—C. M. Newton assuming by the contract of sale the payment of all firm debts, and taking all the share of Flory in the stock of carriages, etc., including "all book accounts and moneys and credits owing said firm, and the good will of all said business;" Flory granting to

Newton absolute ownership of the property, with the right to sell and dispose of the same. At the time of sale the plaintiff companies and the Ottumwa Buggy Company (originally a party plaintiff, but it dismissed the suit as to itself) were creditors of the firm for goods and materials furnished. January 22, 1889, Flory & Newton made to A. M. Harrah a chattel mortgage on the firm stock to secure him as security for the firm against the payment of a firm debt of one thousand dollars. The day following the sale by Flory to Newton, April 18, 1889, C. M. Newton made to the defendant, Mary A. Leverton, a mortgage on the stock to secure four notes aggregating two thousand dollars, which notes were executed by C. M. Newton to his wife, September 17, 1888, and were by his wife transferred to her sister, Mary A. Leverton. The consideration for these notes, as between C. M. Newton and his wife, is said to be money loaned when Newton engaged in the carriage business with Flory in 1888. Mary A. Leverton paid the Harrah mortgage on the stock, and took from C. M. Newton, April 18, 1889, a second mortgage to secure her therefor; the amount then being nine hundred and ninty-three dollars. On the twentieth of April, 1889, C. M. Newton made. to the defendant, W. A. Armstrong, a mortgage on the stock to secure the sum of two hundred dollars. April 20, 1889, after the execution of the Armstrong mortgage, the plaintiffs, by virtue of attachments in separate suits seized the stock as liable for the firm debts; and the issues involve the priority of the attachment liens over those of the mortgages. The district court gave preference to the Armstrong mortgage and to the Mary A. Leverton mortgage of nine hundred and ninety-three dollars over the attachments, and to the attachments over the two thousand dollar mortgage to Mary A. Leverton. The principal contention in the case is as to the action of the district

court in preferring the attachments to the two thousand dollar mortgage.

A rule of law invoked as against the action of the court is that, although the assets of a partnership will be first applied to the satisfaction of the firm debts, and that the separate creditors of the partners can seek indemnity from the surplus, the rule is for the benefit of the partners; and if upon dissolution they waive the privilege by dividing the property between them, and then mortgage it severally to secure their individual debts, the creditors have no grounds of complaint. Such a rule can only be successfully invoked in favor of parties who in their own transactions are free from fraud or collusion against creditors. At the time Flory & Newton dissolved partnership, we think the firm was insolvent, and that the individual members of the firm were also insolvent. The specified consideration to Flory for his interest was one thousand dollars but what he did receive was part of the stock then on hand, and was certainly considerably less in value. The situation just before the dissolution was that the firm assets were somewhere from three thousand to forty-five hundred dollars, which, equitably applied, should have gone to the firm creditors. By the transaction of the dissolution, with the changes immediately following, the firm property is entirely absorbed; and those who have aided the firm's business during its existence by extending credit are left without any means for payment, under the claims of the appellants. It is perhaps not to be said that the law will not in any case give its support to such results; but it must be said that such support is only given where the transaction is free from fraud, or the law's protection is invoked in behalf of an innocent party. In this case it is not to be said that the partners were not actuated by a fraudulent purpose. When Flory took a part of the firm stock in payment, he knew that he was withdrawing, and placing beyond the reach of creditors,

property that should be applied in payment of the firm debts at once, if there was to be a dissolution. The result of Flory's acts was unmistakably to defraud the firm creditors. From his acts we may assume the intent. Having in view the rapidity and extent to which Newton incumbered the stock remaining to him immediately following his agreement to pay the firm debts, and by such incumbrance placing the only means he had for their payment beyond reach, it is but natural to say that he, too, by the act of dissolution, intended to defraud the creditors of the firm. A more speedy and complete placing of firm property beyond the reach of its creditors, where in equity it should have been applied, it is difficult to imagine; and, where the acts of parties are attended with a result so inequitable, courts will not be reluctant in ascribing a fraudulent purpose. Under such a state of facts as between the partners, the property would be in trust for the benefit of the firm creditors.

A more difficult task is to determine the facts and apply the law to the conduct of Mary A. Leverton. The notes, to secure which the mortgage to her was given, she purchased from her sister, Mrs. Newton, applying in payment therefor nine hundred and forty dollars of a previous indebtedness of Mrs. Newton to her, and paying the balance through an exchange of property. The purchase of these notes was at the instance of Mrs. Newton, Miss Leverton refusing to make the purchase unless Mr. Newton would secure their payment, which he agreed to do, and which agreement resulted in the giving of the mortgage in question. There can be no question but that Miss Leverton knew before she bought the notes—relying on the promise of Newton that he would secure them—that the security must come from the property that was or lately had been that of the partnership. It appears from the evidence that the purchase of the notes was not finally agreed upon until some time during the day of the

seventeenth of April, 1889, and after Miss Leverton. had learned that the partnership had been dissolved. The first talk of the purchase of the notes was in the fall of 1888, when she declined to purchase them unless Mr. Newton would secure the payment. When the notes were purchased, and the mortgage given, she knew of the recent dissolution, and of course that there must be a settlement of partnership affairs, and, without determing the question of her actual knowledge of the financial condition of the firm, and of the purpose as to creditors, we think the situation was such as should have put her on inquiry as to the rights of firm creditors before parting with her money for the purchase of notes that she knew could not then be paid, and which she was unwilling to accept on the unsecured responsibility of Newton. She knew of the personal irresponsibility of both of the partners, and that both were in debt and unable to pay. Such facts should surely have excited a suspicion that by her transaction she was invading the rights of creditors, which she actually did. For the purposes of the case, conceding the rule that if innocent she should be protected, we do not find that to be the fact. Before creditors should be thus left without recourse, it should be reasonably certain that Miss Leverton is within the rule of law by which she must be protected because an innocent purchaser. It is not as if the creditors were some way in fault for her position. They are free from fault, and but for her act are certainly entitled to the two thousand dollars. She had an opportunity, in view of her knowledge of the situation, to protect herself after the dissolution. The creditors never had.

On the plaintiffs' appeal, the judgment of the district court is so manifestly right that we do not think it is seriously questioned. The judgment is, on both appeals, AFFIRMED.