D. W. HAYDOCK, ALANSON CLARK Substituted as Plaintiff, Appellants, v. L. L. PATTON, Sheriff, *et al.*

**Attaching Mortgaged Chattels.** Three mortgages were made on a stock of goods. Creditors levied an attachment upon it without making any deposit to pay the mortgages, as provided by chapter 117, Acts, Twenty-first General Assembly. They *asserted the mortgages to be fraudulent and void*, and shortly after the levy brought actions in equity to have them so declared. They were successful as to one of the mortgages, only. Between said levy and the institution of the equity suits plaintiff took a fourth mortgage on the stock with knowledge of the levy. *Held*, the failure to make said deposit gave the last mortgage no priority over the attachment levy. Such mortgage is inferior to liens given the creditor subsequent to the taking, in said equity suits. *Wells v. Sabelowitz*, 68 Iowa, 238, and *Blotcky v. O'Neill*, 83 Iowa, 574, distinguished.

*Appeal from Jasper District Court.*—HON. D. RYAN, Judge.

FRIDAY, OCTOBER 19, 1894.

ON AUGUST 22, 1889, Haydock commenced this action against the defendant, Patton, claiming immediate possession of certain chattel property held by the defendant, as sheriff, under attachments, claiming that the attachments were void, on account of a failure to deposit or tender to parties holding prior chattel mortgages upon property, the amount due thereon. On December 5, 1889, Haydock filed an amended and substituted petition, making Mary A. Leverton and W. A. Armstrong, prior mortgagees, defendants, and asking a writ for the return of the property, damages for the wrongful detention thereof, and judgment for the value of the property, "if the same can not be found, and for his damages and costs." Defendants' demurrer to the amended and substituted petition was overruled November 4, 1890, and on the fourteenth day of June,

1891, an amendment was filed, substituting Alanson Clark, assignee of the cause of action, as sole plaintiff. Plaintiff Clark set out the official bond of defendant Patton as sheriff of Jasper county, with N. R. Smith and N. I. Young as sureties, who were made defendants, and asking judgment on the bond for two thousand dollars, for the wrongful conversion of said property. The defendants, Leverton and Armstrong, answered, substantially admitting the allegations of the petition; and the defendants, Patton, Smith, and Young, answered at length, joining issues that will be hereafter noticed. The cause was tried to the court, upon an agreed statement of facts, including the two abstracts filed in this court in the case of the *Buggy Co. v. Flory & Newton et al.*, and the evidence of Alanson Clark given before the court. Said agreed statement of facts and abstracts were subject to objections for incompetency, immateriality, or irrelevancy, except that copies might be used where the original would be competent. After the cause was submitted, a motion was sustained setting aside the submission, and granting plaintiff leave to demur to the answer of the defendants Patton, Smith, and Young. After filing said demurrer, the case was resubmitted with the demurrer, upon the same evidence, and thereafter judgment was entered overruling plaintiff's demurrer to said answer, to which plaintiff excepted, and dismissing the plaintiff's petition upon its merits, and rendering judgment against him for costs, to which he also excepted, and from which judgment he appeals. The questions raised by the demurrer involve the merits of the case, and need not be separately stated.— *Affirmed.*

*Alanson Clark* for appellant.

*H. S. Winslow* for appellees Patton, Smith, and Young.

*Meredith & Ogg* and *Harrah & Meyers* for appellee Mary A. Leverton.

*Harrah & Meyers* and *A. M. Harrah* for appellee W. A. Armstrong.

GIVEN, J.—I.    The agreed statement shows the following facts:    April 16, 1889, the firm of Flory & Newton, composed of C. D. Flory and C. N. Newton, dissolved, Newton taking the stock, and agreeing to pay the debts.    On the next day, Newton gave to Mary A. Leverton, his sister-in-law, a mortgage for two thousand dollars on the stock; and on the following day, April 18, he gave her another mortgage on the same stock, to secure nine hundred and ninety-three dollars.    On the twentieth of April, following, he gave W. A. Armstrong a mortgage on the same property, to secure two hundred dollars.    On the twentieth and twenty-third days of April, 1889, the defendant Patton, as sheriff, levied three writs of attachment on the mortgaged property, and took possession thereof.    These writs were issued in suits brought by the Ottumwa Buggy Company, Kelly Manufacturing Company, and Cummings & Emmerson, against Flory & Newton and the members of the firm.    Thereafter, on the seventh day of May, 1889, and while the sheriff was in possession of said property, Newton executed a mortgage upon the same to D. W. Haydock, to secure a debt owing to him by Flory & Newton.    On June 8, 1889, the attaching creditors brought a suit in equity against Flory & Newton, M. A. Leverton, and William A. Armstrong, claiming liens under their attachments superior to the first three mortgages, because of said mortgages being fraudulent and void as to creditors. Shortly thereafter, M. A. Leverton and W. A. Armstrong each brought an action against the sheriff, based on their mortgages, in which each claimed to be entitled

to the mortgaged property, and that no levy had in fact been effected under the attachments, because of a failure to comply with chapter 117 of the Acts of the Twenty-first General Assembly. Such proceedings were had in the equity cause that the further prosecution of these cases was restrained until the final decree in the equity suit. The same claim of ownership and right to possession, and the same alleged defect in the attempted levy were pleaded by these defendants in the equity suit. Decree was entered at the January term, 1890, in the equity suit, declaring said two thousand dollar mortgage fraudulent and void, and establishing the nine hundred and ninety-three dollar mortgage as the first lien, Armstrong's mortgage as the second, and the attachments as the third, and ordering special execution to sell the property. On appeal to this court, said judgment was affirmed. See *Kelley v. Flory*, 84 Iowa, 671, 51 N. W. Rep. 181. The property was sold under the order, and out of the proceeds the costs and the two mortgages were paid, and a small surplus applied to the debts of the attaching creditors.

II. The controlling question in this case is whether attaching creditors of a mortgagor of chattels acquire such an interest in the mortgaged property by levying their attachments thereon, under claim that the mortgage is void as to creditors, as entitles them to priority over a valid mortgage subsequently taken with knowledge of the levy. Appellant contends that a lien can only be acquired by proceeding as provided in chapter 117, Acts of Twenty-first General Assembly; and that, as these creditors did not thus proceed, they had no lien at the time his mortgage was taken, and, therefore, he is entitled to priority over any lien or interest they thereafter acquired. The following will be a sufficient quotation from that act for the purposes of this case. It provides "that personal property not exempt from execution hereafter mortgaged,

* * * may be taken on attachment or execution issued at the suit of a creditor of a mortgagor, but before the property is so taken the officer or plaintiff must pay or tender to the holder of the mortgage the amount of the mortgage debt and interest accrued, or must deposit the amount thereof with the clerk of the district court of the county wherein the mortgaged property is found payable to the order of the holder of the mortgage. * * * Section 2. The holder of the mortgage shall state over his signature and under oath upon the back of said mortgage, the amount due, or to become due thereon, and deliver the same to the person paying him said amount, and if the said sum has been deposited with the clerk of the district court, the holder of the mortgage shall only receive the amount so stated to be due, * * * provided, however, that the execution or attaching creditor shall have the right to controvert, in the court from which the process issued, such statement of indebtedness in the manner provided in other garnishment proceedings, if he give notice in writing to the clerk at the time of the deposit; and the clerk shall hold such deposit until such matter is determined. If the attaching or judgment creditor fails to sustain his claim against the mortgage he shall pay to the holder of the mortgage, interest upon the debt at the rate of ten per cent per annum, together with the costs of the proceeding, and an attorney's fee of ten per cent on the amount of the debt. Section 4. But nothing contained in this act shall in any way affect the right of any creditor to contest for any reason the validity of such mortgage." Prior to this enactment, the usual, if not the only, mode of subjecting the interest of a mortgagor in the mortgaged property to the payment of his debts, when the validity of the mortgage was not questioned, was by garnishment. In such cases no lien was acquired upon the property.

Code, section 2969; *Buch-Reiner Co. v. Beatty*, 82 Iowa, 353, 48 N. W. Rep. 96. Chapter 117 was enacted to provide a mode by which creditors may pursue and acquire a lien upon the mortgaged property to the extent of the mortgagor's interest therein. There is no provision in that act for contesting the validity of the mortgage. On the contrary, that right is expressly reserved in section 4. The only contest provided for is the right to controvert "such statement of indebtedness."

In *Hibbard v. Zenor*, 75 Iowa, at page 479, 39 N. W. Rep. 714, the court, referring to said section 4 says: "The creditors were contesting the validity of the mortgage, on the grounds: *First*, that it was fraudulent; *second*, that it had never been delivered; and, *third*, that they had no notice of it, which, if true, rendered it invalid as to them. The provisions of the act have no application when the mortgage is sought to be avoided on these grounds." In *Thomas v. Manufacturing Co.*, 76 Iowa, at pages 739 and 740, 39 N. W. Rep. 874, the court, after referring to section 4 of said chapter 117, says: "Under that provision, the creditor may contest the right of the mortgagee upon any ground that goes to its validity; but before he can do that (except, perhaps, by an action in chancery, to which, however, he is not bound to resort), he must acquire an apparent lien upon the property, for until he has acquired such a lien, he would have no standing to dispute the mortgage; but he can acquire a lien only by levying on it." In the late case of *Citizens State Bank v. Council Bluffs Fuel Co.*, 89 Iowa, 618, 57 N. W. Rep. 444, this court recognizes the right of creditors of the mortgagor to levy upon the mortgaged property, and to contest the validity of the mortgage, without complying with said chapter 117. It also holds that the validity of the mortgage may be tested under garnishment proceedings. In *Jewett v. Sundback*, 58 N. W.

Rep. (S. D.) at page 23, plaintiff sought to recover from the defendant for failing to levy upon mortgaged chattels. It was claimed on behalf of defendant that he was not required to levy upon the property included in the mortgage, for the reason that the plaintiff failed to pay or tender the amount due upon the mortgage, as provided in section 4389 of the Compiled Laws of that state. That law, so far as this question is concerned, is quite similiar to our own statute. The court says: "But we are of the opinion that that section has no application to a mortgage which the creditor claims to be fraudulent and void as against the creditors of the mortgagor. The object of that section evidently is to prevent an officer from attaching and levying upon personal property included in the valid chattel mortgage before the amount due upon such mortgage is paid or tendered as therein provided. But it has no application to a void or fraudulent instrument denominated a 'chattel mortgage.' Such an instrument, void and fraudulent as to the creditors of the mortgagor, is not in law a 'mortgage' as to them, though it may be so called. To require a creditor, before he can contest a mortgage so claimed to be fraudulent and void as to the creditors of the mortgagor, to pay the amount due upon the mortgage, or deposit that amount with the county treasurer, would be imposing a duty upon the creditor so taking the mortgage not intended to be imposed by the statute.

"We think the proper construction of the statute is, that when an attaching or judgment creditor claims that a mortgage is fraudulent and void as to him, and is willing to assume the risk of attacking such mortgage, he may have the property attached or levied on, and in that proceeding test the validity of such mortgage." It was held to be the duty of the officer, when directed and indemnified, to levy upon the property included in such mortgage. *Wells v. Sabelowitz*, 68 Iowa, 238,

26 N. W. Rep. 127, is relied upon by appellant. While that case is identical with this one as to the number of mortgages and the order of their execution and of the levies, it is different in this: that there was no claim in that case that the mortgages prior to the levy were fraudulent, and the levies were not followed by an action in equity to declare them to be fraudulent, and to establish liens under the levies. It was held that no lien was created by the levies, and that intervener was entitled to the property, under his mortgage taken thereon while the property was held under the levies. The validity of the mortgage not being questioned, it was clearly a case where not even an apparent lien was created by the levies, such as might be made by subsequent proceedings to ripen into a perfect lien. *Blotcky Bros. v. O'Neill,* 83 Iowa, 574, 49 N. W. Rep. 1029, is also relied upon by appellant. In that case the validity of the mortgage was not in question, and both parties rested their claim to possession of the mortgaged property upon alleged compliance with chapter 117. It was held that the attachments and executions under which the sheriff sought to justify his possession were unauthorized, and gave the sheriff no right to possession of the mortgaged property as against the plaintiffs, who had, by complying with chapter 117, become the owners of the mortgage, the validity of which was not questioned. What is said as to the levies must be considered as applicable only to the facts of that case. In *Buck-Reiner Co. v. Beatty, supra,* it is held that the remedy provided in chapter 117 is not to the exclusion of the right to garnish the mortgagee. Our conclusion is that, when a creditor of a mortgagor seeks to subject his interest in the mortgaged property to the payment of his debts, he may proceed by garnishment, or under said chapter 117, if the validity of the mortgage is not questioned; but, if

the validity of the mortgage is questioned, he may make his levy or garnishment, and then proceed, by the mode recognized in the practice, to cancel the mortgage, and have his levy established as a lien upon the property, without complying with the requirements of chapter 117.

III.   It will be seen from what we have said that these attaching creditors, claiming that the prior mortgages were fraudulent, had a right to levy their attachments on the mortgaged property, and, having done so, to contest the validity of the prior mortgages, without complying with chapter 117; also, that, while their levies did not create actual liens on the mortgaged property, they gave to the creditors such an apparent lien or interest as was necessary to and did entitle them to contest the validity of the mortgages, for the purpose of having their apparent liens fully established as against all or any part of the mortgages found to be fraudulent as to creditors.   Mr. Haydock, on the advice of the present plaintiff, then acting as his attorney, took his mortgage after these levies, and while the property was in the hands of the sheriff, both he and his attorney then having full knowledge of these facts, and of the rights of the attaching creditors, upon the strength of their levies, to proceed to contest the validity of the mortgages.

The only course open to the attaching creditors to contest the validity of the prior mortgages was by instituting a suit in equity for their cancellation, or by defending against actions brought by those mortgagees. They brought their suit in equity, and, when actions were brought by the mortgagees, appeared and defended against them.   Appellant's contention is that, as the attaching creditors had acquired no actual lien upon the mortgaged property at the time his mortgage was taken, he is entitled to priority over any lien subsequently declared in their favor.   To

so hold would often put it in the power of a debtor to defeat inquiry into the validity of mortgages given by him prior to the levy, by subsequently mortgaging the property to its full value. Surely the vigilant creditor is not to be thus defeated in his right to question the validity of mortgages executed prior to his levy. As already stated, the mortgage under which plaintiff claims was taken with full knowledge of the fact of the levies and the rights of the attaching creditors to pursue the property by contesting the validity of the prior mortgages. It was taken while the property was in the custody of the law, under levies rightfully made, and with the knowledge of that fact. C. N. Newton could not convey to Mr. Haydock any greater interest than he then had in the mortgaged property. His interest was subject to the three prior mortgages so far as they are valid, and also to the right which the attaching creditors acquired by their levies to contest the validity of those prior mortgages. The property being in the custody of the law for the purposes of that contest, it seems to us clear that Mr. Haydock, knowing that fact, took it subject to the rights of the creditors to prosecute that contest and to the results thereof. In *Swantz v. Pillow*, 50 Ark. 300, 7 S. W. Rep. 167, it is said: "One who purchases property in suit with actual notice of the litigation, as the plaintiff in this action did, does so at his peril, and must abide the result, the same as the party from whom he gets his title." It is true that, at the the time plaintiff's mortgage was taken, no other suits were pending than the actions in which the attachments were issued. The action in equity was not brought until a short time thereafter, but we think the fact of plaintiff's knowledge of the levy bound him as to the results that might follow. Mr. Haydock was not made a party to the action in equity, nor was it necessary that he should be, as the validity of his

mortgage was not in question.  Appellees cite authorities from which they claim that plaintiff is concluded by the decree in the equity action, but whether this is correct or not we need not determine.  The validity of the prior mortgages, except the one for two thousand dollars, which plaintiff alleges was fraudulent, is put in issue in this action, and the case on that question is submitted on the same evidence introduced in the equity action.  We held on appeal that that evidence warranted the decree, and we see no reason to change that conclusion. While it is true the attaching creditors could not cause the property to be sold as the property of the attachment defendants, because of the prior mortgages, they could seize and hold it, and proceed to set aside the prior mortgages for fraud.  In so far as they were successful, they were entitled to have their levies established as liens as of the date at which they were made; for to the extent to which the mortgages were fraudulent the property was not the property of the mortgagees, but of the attachment defendants, and subject to the levies. We say they had the right to hold the property as well as to seize it, for, without the right to hold, the right to seize would be barren.  It was under these rights that defendant Patton, as sheriff, took and held the property.  Plaintiff's mortgage was taken with knowledge of, and subject to, these rights, previously acquired.

Other questions are discussed which, in view of our conclusion, need not be considered.  After a careful examination of the entire record, we reach the conclusion that there was no error in overruling plaintiff's demurrer to the defendant's answer, nor in entering judgment dismissing the plaintiff's petition upon its merits. AFFIRMED.