106  374
106  501

HENRY GEIERSHOFER & COMPANY, Trustees, Appellants, v. ISRAEL NUPUF, *et al.*

**Attachment:** MORTGAGED PROPERTY: *Priorities.* In an action to foreclose a mortgage the decree is conclusive against the parties who fail to appeal.

**Appeal:** DECREE NOT APPEALED FROM. Act April 9, 1896, section 1 (Acts Twenty-first General Assembly, chapter 117), provides that mortgaged personal property may be attached, but before doing so plaintiff or the officer must pay or tender to the holder of the mortgage the amount due, or must deposit it in court. Section 4 provides that "nothing contained in the act shall in any way affect the right of any creditor to contest for any reason the validity of such mortgage." *Held,* that where an attachment of mortgaged property is made before the giving of a second mortgage, but the deposit to secure the prior mortgage is not made until

afterwards, the lien of the attachment is superior to that of the second mortgage. The attachment was always an apparent lien;. and if it develops on such contest that the first mortgage is invalid, the lien of the attachment is prior to the second mortgage as to all the property covered by it, and not prior to the amount of the first mortgage, merely.

*Appeal from Polk District Court.*—HON. W. F. CONRAD,. Judge.

SATURDAY, OCTOBER 15, 1898.

IN September, 1895, Nupuf commenced business in Des Moines as a clothing merchant. He was then indebted to Burgunder Bros. & Co. and to Mrs. Friedenberg, some clerks in his employ, and others. On September 9, 1895, he gave to Mrs. Friedenberg a chattel mortgage on his stock of goods, which was filed for record at 1:45 P. M. of that day. He also gave a mortgage to his clerks to secure the amounts due them,. which was filed for record at 1:48 P. M. of that day. On the same day Burgunder Bros. & Co. commenced suit by attach- ment, and levied on the stock of goods at 3:45 P. M. of the same day, and took possession of it. It also attached the mortgagees as garnishees. September 13, 1895, Nupuf gave to the plain- tiff firm, as trustee for certain of his creditors, a mortgage on the stock. The mortgages all provided that the mortgagees might take possession of the goods at their election, and sell the same for the payment of the debts secured. On Sep- tember 14, 1895, Burgunder Bros. & Co. deposited money with the clerk to pay Mrs. Friedenberg and the clerks, who were mortgagees, and notified the clerk to hold the money, as it intended to contest the validity of the mortgages. Plaintiff Henry Geiershofer & Co., trustee, commenced this suit Sep- tember 14, 1895, to foreclose its mortgage, making the mort- gagees and Burgunder Bros. & Co. parties, and secured the appointment of a receiver, who is also a party. The goods, by due course of procedure, were converted into money, which is in the hands of the receiver. The issues are such that the

·mortgage to Mrs. Friedenberg was adjudged invalid, the mort-.gages to the clerks were adjudged valid, and a first lien on :the money in the hands of the receiver. The attachment of Burgunder Bros. & Co. was sustained, and its claim is to be ·paid after the payment of the clerks and certain costs. The ·decree denied to plaintiff any claim on the money in the hands ·of the receiver, but gave judgment for the amounts due the respective parties represented. The plaintiff appealed.— *Affirmed.*

*Dudley & Coffin* and *Gatch, Connor & Weaver* for :appellant.

*Berryhill & Henry* and *McVey & McVey* for appellee.

GRANGER, J.—A little sifting will bring more clearly -to view the questions to be considered. The decree is not now ·questioned, in so far as it provides for the payment, first, of the clerks, as mortgagees. Mrs. Friedenberg does not appeal, and hence the judgment is conclusive as to her. The amounts due the clerks, who are to be paid -first, added to the amount due Burgunder Bros. & Co., is more than the amount in the hands of the receiver, so that, under -the decree, there could be nothing for plaintiff, which is likely -the reason for denying to it any claim on the money. It will now be seen that the contentions arise between plaintiff and Burgunder Bros. over the money in the hands of the receiver in excess of the amount necessary to pay the clerks. To meet -the contentions it is important to have some dates well in mind. The attachment proceedings of Burgunder Bros. & ·Co. was commenced September 9th, and the levy was made on that day. The mortgage to the plaintiff was made September 13th, and the deposit by Burgunder Bros. & Co., for the mort-:gagees, was made September 14th. Importance is attached to the fact that when the mortgage was given to plaintiff the ·deposit had not been made. Prior to the enactment of chapter 117 Acts Twenty-first General Assembly, which was

approved April 9, 1886, no lien could be acquired on mortgaged personal property by levy of an attachment. That act changed the law in this respect, and we quote therefrom as follows: "Section 1. That personal property not exempt from execution hereafter mortgaged, or heretofore mortgaged when the debt secured thereby is due, may be taken on attachment or execution issued at the suit of a creditor of a mortgagor, but before the property is so taken the officer or plaintiff must pay or tender to the holder of the mortgage the amount of the mortgage debt and interest accrued, or must deposit the amount thereof with the clerk of the district court of the county wherein the mortgaged property is found payable to the order of the holder of the mortgage.    *    *    *· Section 2. The holder of the mortgage shall state over his signature and under oath on the back of said mortgage, the amount due or to become due thereon, and deliver the same to the person paying him said amount, and if the said sum has been deposited with the clerk of the district court, the holder of the mortgage shall only receive the mortgage and other evidence of indebtedness, and the surplus, if any, shall be returned to the person who made the deposit: provided, however, that the execution or attaching creditor shall have the right to controvert, in the court from which the process issued, such statement of indebtedness in the manner provided in other garnishment proceedings, if he give notice in writing to the clerk at the time of the deposit; and the clerk shall hold the deposit until such matter is determined." It seems to be the thought of appellant that, as the deposit was not made until September 14th, the levy of the attachment was not complete till that date so as to be a lien; and, as its mortgage was made on the thirteenth, it is prior. That statute, in the respect suggested, has received quite careful consideration by this court. The case of *Clark v. Patton*, 92 Iowa, 247, is very similar, except that in that case there was no deposit, but an attachment issued, and property was taken under it. As indicating the question there determined, we quote from

the opinion as follows: "The controlling question in this case is whether attaching creditors of a mortgagor of chattels acquire such an interest in the mortgaged property by levying their attachment thereon, under claim that the mortgage is void as to creditors, as entitles them to priority over a valid mortgage subsequently taken with knowledge of the levy." This further difference between the cases is claimed: That, in the *Clark-Patton Case* the attaching creditor secured only the amount of the invalid mortgages, while in this case the decree gives to Burgunder Bros. & Co. more than that, as, in fact, only the Friedenberg mortgage of about one thousand two hundred and fifty dollars, was adjudged invalid, and the amount in excess of what is to be paid to the clerks, and the costs, is more than the Friedenberg claim; the thought being that the attachment levy, without the deposit, could in no event secure to the attaching creditor more than the amount of the invalid mortgages. The application of such a rule would give to plaintiff a claim on a part of the money in the hands of the receiver. In the *Clark-Patton Case* is the following language: "Our conclusion is that, when a creditor of a mortgagor seeks to subject his interest in the mortgaged prop erty to the payment of his debts, he may proceed by garnish-ment, or under said chapter 117, if the validity of the mort-gage is not questioned; but, if the validity of the mortgage is questioned, he may make his levy or garnishment, and then proceed, by the mode recognized in the practice, to cancel the mortgage, and have his levy established as a lien upon the property, without complying with the requirements of chapter 117. It will be seen from what we have said that these attaching creditors, claiming that the prior mortgage was fraudulent, have a right to levy their attachments on the mort-gaged property, and, having done so, to contest the validity of the prior mortgages, without complying with chapter 117; also that, while their levies did not create actual liens on the mortgaged property, they gave to the creditors such an appar-ent lien or interest as was necessary to and did entitle them

to contest the validity of the mortgages, for the purpose of having their apparent liens fully established as against all or any part of the mortgages found to be fraudulent as to creditors." The concluding language of the quotation is thought to sustain appellant's view that the lien of an attachment is limited to what is proven to be fraudulent. Such was not the thought of the language. The court was not then considering the question we have in hand, but simply the right to contest fraudulent mortgages, and the methods of doing it, and simply expressed the thought indicated without an intent to determine the question whether the lien of such an attachment would reach further or not. We have repeatedly expressed the thought that language in an opinion must be limited by the subject to which it is applied. From the other parts of the language quoted it will be seen that, where the purpose is to contest the validity of a mortgage, the creditor may levy his attachment on the property, or garnish by attachment, without reference to chapter 117 ; and in so doing he has an apparent lien that protects the property until the issue is determined, and his lien, if he has one, is fully established. The thought as to an "apparent lien" was first expressed in *Thomas v. Manufacturing Co.*, 76 Iowa, 735, and its import is this : A levy is made with a view to contest the validity of a mortgage. If the mortgage is a valid one, as against the mortgage the attachment is really no lien. If valid, it is a lien. Pending the determination of the fact, the uncertainty makes the lien merely an apparent one. It does not mean that the lien of the attachment is limited to property sufficient in value to pay the mortgage, but it attaches upon all the property covered by the mortgage. The question presented by the proceeding is, is the mortgagee or the attaching creditor entitled to the property when the attachment is levied ? The lien may be said to be apparent as to the mortgagee as well as the creditor. If the mortgage proves invalid, there was never more than what appeared to be a lien. It was not actual. Section 4 of chapter 117 is as follows : "But nothing contained in the act

shall in any way affect the right of any creditor to contest for any reason the validity of such mortgage." It is this section,—' being a part of chapter 117,—that has given rise to the holding that an attachment levy becomes a lien on mortgaged personal property without complying with other provisions of said chapter. It is said that to permit the attachment to become a lien on more property than is sufficient to pay the invalid mortgage is to overrule the former holdings of this court. Without concurring in that view, it is likely true that the holding effects a change in the law to some extent; but, if so, it is because of the change in the statute law. It is to be understood that the attachment does not cover property not covered by the mortgage, and as to which the mortgage was adjudged invalid; and we can see no reason why the attachment, from its levy, is not an apparent lien on all the property covered by the invalid mortgage, if levied upon all; and, if finally adjudged a lien, why it should not be on all such property. It matters not that some of the mortgages were adjudged invalid. As between Burgunder Bros. & Co. and plaintiff, the case is as if the Friedenberg mortgage had been the only one, and covered all the property. Our holding is that the lien of the attachment was operative as to all the property levied upon and covered by the mortgage, and when the mortgage was adjudged invalid the lien continued as to all the property, and that a junior mortgagee has no preference as to any part of it necessary to pay the attachment claim. These considerations are conclusive of the case, and the judgment is AFFIRMED.